[No. 19004-8-III. Division Three. August 7, 2001.]

AARON SCOTT WEEKLY, *Respondent*, v. THE DEPARTMENT OF LICENSING, *Petitioner*.

---

[8] The Tenino Aerie brought this action solely under the WLAD.

*Christine O. Gregoire, Attorney General,* and *Laura J. Watson, Assistant,* for petitioner.

*John P. Nollette* and *Donovan E. Walker,* for respondent.

KURTZ, C.J. — The Department of Licensing revoked Aaron Scott Weekly's driver's license after he was arrested for driving under the influence. At the license revocation hearing, a witness Mr. Weekly subpoenaed was allowed to testify over the phone, instead of in person. Mr. Weekly appealed the hearing examiner's decision to the superior court, contending that the hearing violated his due process rights because he was unable to confront the witness who testified over the phone. The superior court agreed and reversed. We granted discretionary review. On appeal, the Department of Licensing contends Mr. Weekly had no right to confront the witness in person, and the witness's appearance by phone did not violate due process. We agree and reverse.

## FACTS

At approximately 9:20 P.M., Officer James Wallingford of the Cheney Police Department heard a car horn honking outside of the police station. He went outside and found a man standing beside a Saturn automobile. A woman and a small boy were inside the Saturn. The woman, Sandra Haase, was honking the horn and waving her arms frantically at the officer. A BMW was parked behind the Saturn.

Officer Wallingford contacted the woman, and she informed him that the man had been following her. She said his car bumped hers as she stopped in front of the police station. The officer checked the bumper of the car and observed a scratch. The woman told the officer that she did not know the man who had been following her.

When Officer Wallingford contacted the man, he asked him whether there was a problem. The man, later identified as Aaron Scott Weekly, responded that he had had too much to drink. Officer Wallingford noticed that Mr. Weekly smelled of alcohol, his speech was slurred, his eyes were bloodshot and his face was flushed. Officer Wallingford handcuffed Mr. Weekly and escorted him into the police station.

Inside the police station, Mr. Weekly was identified through several credit cards contained in his wallet. Mr. Weekly failed all of the field sobriety tests he was given. Officer Wallingford arrested Mr. Weekly for driving under the influence.

Subsequently, Mr. Weekly's license was located in the BMW. Officer Wallingford told Mr. Weekly that he could not close a window on the car. Mr. Weekly explained that he was a private auto dealer and he had just purchased the car.

Officer Wallingford read Mr. Weekly his rights, and, on the advice of counsel, Mr. Weekly submitted to a breath test. He was tested twice and he registered .194 on the first test and .198 on the second test. Officer Wallingford cited

Mr. Weekly for driving under the influence, and for driving with a suspended license in the second degree.

After Officer Wallingford escorted Mr. Weekly into the station, he again contacted Ms. Haase. Ms. Haase said that she did not want the man who followed her to know her name because she feared he was mentally unstable. She reluctantly identified herself, and asked that her name not be disclosed. She said she did not want to be called into court to testify.

However, eventually Mr. Weekly's attorney subpoenaed Ms. Haase to appear at the implied consent hearing. The subpoena was served on Ms. Haase's husband two days before the hearing date. She did not appear. She later testified that she was out of state on the hearing date. Subsequently, she requested permission to appear at the next hearing by telephone.

At the telephonic hearing, Mr. Weekly's attorney argued that the witness, who claimed to be Ms. Haase on the phone, might not truly be Ms. Haase. Counsel asked Ms. Haase several identifying questions about her height, weight, marital status, and the location of her job, purportedly to confirm her identity. She was reluctant to give some information to Mr. Weekly because she was fearful of retribution.

Mr. Weekly did not testify at the hearing. He did not subpoena Officer Wallingford to testify. He moved to dismiss on the basis that Ms. Haase did not appear in person at his attorney's office.

The hearing officer ruled that Ms. Haase did not need to identify Mr. Weekly a second time, and Mr. Weekly did not present any evidence of mistaken identity. The officer affirmed the Department's revocation of Mr. Weekly's driver's license for two years.

Mr. Weekly appealed the revocation to superior court. The superior court reversed the revocation, finding that the implied consent hearing violated due process because Ms. Haase was allowed to appear by telephone. The Depart-

ment filed a motion for discretionary review, which was granted.

## ANALYSIS

The Department of Licensing contends that the superior court erred by finding the Department's failure to compel Ms. Haase's attendance in person violated Mr. Weekly's due process rights. The Department further contends that Mr. Weekly had no right to confront Ms. Haase, a citizen informant, at a civil administrative hearing.

The implied consent law provides that a person who drives in this state is deemed to have consented to a test to determine the alcohol content of his or her blood or breath if arrested for suspicion of driving under the influence. RCW 46.20.308(1). If the test results indicate that the driver's alcohol concentration is 0.08 or more, the officer is directed to serve notice to the driver of the Department of Licensing's intent to suspend, revoke or deny the person's license as required by the statute. RCW 46.20.308(6)(a). Also, the officer is required to inform the driver of his or her right to a hearing. RCW 46.20.308(6)(b).

If a hearing is requested, the proceeding is governed by RCW 46.20.308(8). The scope of the hearing covers, among other issues, whether a law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle within Washington while under the influence of intoxicating liquor. RCW 46.20.308(8). The officer's sworn report is prima facie evidence that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle within this state while under the influence. *Id.* A hearing officer conducts the hearing, and may issue subpoenas for the attendance of witnesses. *Id.*

■■ "Revocation of a driver's license for a statutorily defined cause implicates a protectable property interest that must comply with due process." *Lytle v. Dep't of Licensing*, 94 Wn. App. 357, 361, 971 P.2d 969 (1999) (citing

*Bell v. Burson*, 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971)). The State has the burden to prove the license revocation complied with due process. *Lytle*, 94 Wn. App. at 361. In *Lytle*, this court relied upon *Flory v. Department of Motor Vehicles*, 84 Wn.2d 568, 571, 527 P.2d 1318 (1974) for the proposition that "a license to drive may not be revoked without a hearing that satisfies the requirements of due process, including the right to confront witnesses." *Lytle*, 94 Wn. App. at 361-62.

In *Flory*, the court found a Washington Administrative Code provision (WAC 308-102-045 (repealed 1975)) violated due process. The provision set forth the procedure for the financial responsibility act statute, chapter 46.29 RCW, relating to driver's license revocations and provided that all hearings arising under the act would be based solely on written affidavits. *Flory*, 84 Wn.2d at 570-71. The *Flory* court noted that the requirements of a due process hearing included the right to confront adverse witnesses, the right to present evidence and oral argument, and the right to representation by counsel. *Id.* at 571.

In *Lytle*, the defendant requested a hearing and asked the Department to subpoena the three officers involved in his arrest for suspicion of driving under the influence. *Lytle*, 94 Wn. App. at 359. For various reasons, none of the officers appeared at Mr. Lytle's hearing. Mr. Lytle unsuccessfully moved for dismissal based on the unavailability of the officers. The hearing officer, based on the certified written reports of the officers, sustained the Department's revocation decision. *Id.* at 360. This court reversed, holding that Mr. Lytle was entitled to cross-examine the officers who provided evidence against him, and because he was not able to do so, despite his request that they appear, his due process rights were violated. *Id.* at 362-63.

The Department distinguishes *Lytle* based on its facts. In this case, Mr. Weekly did not subpoena the officer who arrested him. Rather, he subpoenaed the citizen who informed the officer that Mr. Weekly was following her. An additional distinction between the present case and *Lytle* is

that Ms. Haase did appear, and Mr. Weekly was afforded the opportunity to cross-examine her, albeit by telephone.

 Mr. Weekly, on the other hand, contends that *Lytle* and *Flory* grant him an absolute right to confront witnesses in person to cross-examine them, and anything less violates his due process rights. We disagree. *Flory* holds that a process authorizing a hearing in which the only evidence examined is written offends due process because these protections require an individual be given the opportunity to confront adverse witnesses and present both evidence and oral argument. *Flory* does not address whether the confrontation of witnesses must be in person or if adverse witnesses may appear telephonically or in some other manner.

Similarly, Mr. Weekly interprets *Lytle* too broadly. That case holds that due process is not afforded to the driver whose license is revoked based on the officers' written declarations when he requests the arresting officers be present for his revocation hearing, and the officers do not appear. *Lytle* does not address the situation presented here, where the driver fails to subpoena the officer, and the only subpoenaed witness appears by telephone.

Mr. Weekly contends that it was critical to the case for Ms. Haase to appear in person, because she was the only person who could identify that he was driving the car. He argues that because she was not able to point to him during the hearing and identify him as, in fact, the man who followed her to the police station, he was not afforded his due process right to confront her.

Mr. Weekly's argument is flawed. At the police station, Ms. Haase told the officer that Mr. Weekly had been following her and she did not know why and she was frightened. As such, Ms. Haase did identify that a man, the one standing in the parking lot of the police station, was driving the car. She did not identify him by name, because she did not know him.

The officer then took the man into the station and

discovered his identity through credit cards in his wallet. The officer then went out to the car and located Mr. Weekly's driver's license in the car, along with a partially full beer bottle. He told Mr. Weekly that he could not roll up the window of the car, and Mr. Weekly confirmed that the car was his, telling the officer that he had just purchased it.

The test in a revocation hearing is whether the officer "had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle . . . ." RCW 46.20.308(8). In this case, the officer had reasonable grounds to believe Mr. Weekly was driving or in actual physical control of the car for several reasons. First, Ms. Haase informed the officer that the man standing near her car had been following her in the BMW parked behind her car. The officer detained this man. The officer was able to confirm that this man was Mr. Weekly, and that the BMW belonged to him. Even though Ms. Haase could not point to Mr. Weekly at the hearing and identify him as the person who was following her, there were reasonable grounds to believe that he was the person who had been driving the BMW.

In this case, the officer's sworn statement created a prima facie case that Mr. Weekly had been driving his car under the influence. Mr. Weekly then had the burden of refuting this evidence. He failed to request the officer's presence at his own peril. He requested Ms. Haase's presence, and she appeared telephonically. He established that because she was not in the same room as Mr. Weekly, she was unable to identify Mr. Weekly as the man who was following her. However, this did not refute the prima facie case established by the Department. Given the unrefuted evidence, the officer had reasonable grounds to believe Mr. Weekly had been driving or was in actual physical control of the BMW. It was not error for the hearing officer to allow Ms. Haase to appear by telephone.

Reverse.

SCHULTHEIS and BROWN, JJ., concur.