Carlos ANGAMARCA, et al., Plaintiffs,

v.

DA CIRO, INC., et al., Defendants.

No. 10 Civ. 4792 (RLE).

United States District Court, S.D. New York.

Signed Oct. 15, 2012.

⊶6

Louis Pechman, Pechman Law Group PLLC, Jessica N. Tischler, Berke–Weiss & Pechman LLP, New York, NY, for Plaintiffs.

Stephen D. Hans, Nils C. Shillito, Stephen D. Hans & Associates, P.C., Long Island City, NY, Richard Michael Hendler, Law Offices of Richard M. Hendler, Great Neck, NY, for Defendants.

## OPINION AND ORDER

RONALD L. ELLIS, United States Magistrate Judge:

Before the Court is Defendant Da Ciro's motion to dismiss Plaintiff Carlos Angamarca

because of his failure to appear in person for his deposition and his assertion that he will not appear in person to testify at the trial of this action. Plaintiffs oppose the motion on the grounds that Angamarca's deposition is available by remote means and dismissal of his claims is an extreme remedy not warranted by the circumstances. For the reasons which follow, Da Ciro's motion is **DENIED.**

## I. BACKGROUND

Plaintiffs bring this action against Defendant restaurant Da Ciro, Inc. ("Da Ciro") and its principal, Ciro Verde, for violations of federal and state wage and hour laws. Da Ciro was notified on March 19, 2012, that Carlos Angamarca, a named Plaintiff, had returned to his native Ecuador and would be unable to appear in person for his deposition, or for trial, because as an undocumented immigrant, he is unauthorized to return to the United States. Def.'s Mot. Seeking Dismissal of Angamarca ("Def.'s Mot.") 1. Plaintiffs' counsel has offered to have Angamarca deposed via remote means, including by video or telephonic conferencing, which Da Ciro has rejected.

## II. DISCUSSION

### A. Angamarca's Deposition Can Be Taken Via Remote Means

Federal Rule of Civil Procedure 30 generally allows for a noticing party to depose a witness in person, or via other requested means, except where the court orders otherwise on motion. Fed.R.Civ.P. 30(b)(4); *see Braten v. Kaplan,* No. 11 Civ. 3893(DAB) (RLE), 2012 WL 843496, *1 (S.D.N.Y. Mar. 12, 2012) (allowing for plaintiff's deposition to be taken remotely by telephonic or video means). "[C]ourts must strive to achieve a balance between claims of prejudice and those of hardship." *Normande v. Grippo,* No. 01 Civ. 7441(JSR)(THK), 2002 WL 59427, at * 1 (S.D.N.Y. Jan. 16, 2002) (finding a hardship for the plaintiff, a resident of Latvia, to attend her deposition in person).

■ Da Ciro argues that "this Court has long enunciated the policy of requiring a nonresident plaintiff who chooses this district as

his forum to appear for deposition in this forum absent compelling circumstances," *Clem v. Allied Van Lines Int'l Corp.*, 102 F.R.D. 938, 939–40 (S.D.N.Y.1984), yet it is precisely because such circumstances exist here that an in person deposition is not required. The legal infeasibility of attending a deposition or trial in person because of one's immigration status rises to the level of compelling circumstances since Angamarca cannot be compelled to attend without either securing requisite authorization or violating immigration laws. Rule 43(a) of the Federal Rules of Civil Procedure provides an exception to the general rule that a witness's testimony must be taken in open court, that is, "for good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Defendants offer no authority to undermine Angamarca's assertion that compelling circumstances exist here and thus justify his providing virtual testimony for both his deposition and trial. Instead, Da Ciro argues that Angamarca's departure to Ecuador does not constitute "good cause" and "compelling circumstances" given his pending litigation, and that he should have remained in the country with an undocumented status. Def.'s Mot. 6, The Court does not find merit in Da Ciro's argument. *See Stephens v. 1199 SEIU*, No. 07 Civ. 0596(JFB)(AKT), 2011 WL 2940490, *2 (E.D.N.Y. July 19, 2011) (granting a telephonic deposition based upon plaintiff's immigration status that made her unavailable to appear in person).

Defendants also appear to have been aware of Angamarca's undocumented status, and his departure to Ecuador should not come as a surprise. Pl's Opp'n to Def.'s Mot. ("Opp'n") 4, citing Dep. of Ciro Verde ("Verde Dep.") (highlighting the fact that Defendants knew of Angamarca's immigration status because they admitted to paying employees in cash who "did not have the proper documents."). Da Ciro should not be allowed to assert Angamarca's immigration status as a defense to a FLSA claim, particularly when the status was known at the time of employment. *See Solis v. Cindy's Total Care, Inc.*, No. 10 Civ. 7242, 2011 WL 6013844, at *3 (S.D.N.Y. Dec. 2, 2011) (employer cannot "assert a defense under the FLSA on the grounds of the employee's immigration status" to deny "a claim for backpay on behalf of undocumented workers who earned, but were not paid, overtime wages," because such claims "vindicate[ ] not only the policy underlying the FLSA but also federal immigration policy."). In distinguishing *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002), the court in *Solis* found that the redress requested there "pertained only to a period of time following the subject employees' termination," whereas the plaintiffs in *Solis* were seeking backpay "exclusively for work that was performed." *Solis*, 2011 WL 6013844, at *2; *see also NLRB v. Domsey Trading Corp.*, 636 F.3d 33 (2d Cir.2011).

As in *Solis*, Angamarca seeks damages for compensation that was not paid for work that has been performed. The purpose of FLSA is to prevent employers from benefitting from the illegal practice of underpaying employees or refusing to pay employees just compensation for earned wages. Failing to enforce FLSA because the employer raises the immigration status of his employee as a defense to compensation allows the employer to "effectively be immunized from its duty under the statute to pay earned wages, and would thereby be able to undercut law-abiding employers who hired lawful workers, as those workers would not be disabled from vindicating their FLSA rights." *Id.* at *3. While *Hoffman* pointed out that federal immigration policy does not condone an employee's use of fraudulent means to secure employment, such as tendering a false birth certificate, the underlying policy in FLSA is to prevent "the unjust enrichment of employers who hire illegal workers so as to pay substandard wages." *Id.*

Angamarca points out that in Ciro Verde's deposition, Verde admitted to paying undocumented employees less precisely because of their immigration status. Opp'n 4; *see also* Dep. of Ciro Verde, Annexed to Deck of Jessica Tischler as Ex. A. at 45 (Verde testified that he paid "[c]ash for [those] who did not have proper documents"). Defendants

also admitted to violating the law by failing to pay overtime and spread of hours pay. *Id.* at 11. Such admissions demonstrate the kind of willful violations which FLSA explicitly seeks to remedy. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 138, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (finding wilfulness if an employer either knew or showed reckless disregard as to whether its conduct was prohibited by the FLSA). Defendants seek to benefit from their own wrong-doing by escaping liability for violating FLSA when undocumented workers eventually return to their home countries. The Court finds that such a result is inconsistent with the intent behind FLSA and with the spirit of the Federal Rules of Civil Procedure.

**B. Angamarca Is Not Required to Appear In Person at Trial**

Parties are not entitled to a court order precluding witnesses, who have refused to appear at the beginning of a trial because they resided more than 100 miles from this district, from later offering testimony on behalf of their particular claims. *A.I.A. Holdings, S.A. v. Lehman Brothers, Inc.*, No. 97 Civ. 4978(LMM), 2002 WL 31324030, *1–2 (S.D.N.Y. Oct. 16, 2002); *see* Fed. R. Civ. P. 45(b)(2) (allowing testimony from witnesses who resided beyond the 100–mile radius of the court's jurisdiction and refusing to extend the power of a subpoena to compel their attendance in-person at trial). Additionally, this Court is not required to compel Angamarca's attendance at trial, and Defendants "do not contend that the court has the power to order plaintiffs to attend their own trial." *Id.* (citing *Standard Metals Corp. v. Tomlin*, No. 80 Civ. 2983, 1982 WL 1300, at *1–2 (S.D.N.Y. Apr. 14, 1982) (distinguishing between Rule 30(b), governing a court's discretion to determine the location of a deposition, and Rule 45(e)(1), which is silent as to such discretion and a court's ability to compel attendance)). Angamarca argues that while he can give testimony remotely, his testimony may not necessarily be needed at trial to prove liability, because of admissions by Da Ciro. Opp'n 11–12 (citing Verde's deposition where he concedes that he violated the law and accepts, albeit reluctantly, responsibility for paying back Plaintiffs' wages). Da Ciro points to the decreased significance of Angamarca taking the oath abroad, should a foreign deposition be permitted, *see United States v. Oudovenko*, No. 00 Civ. 1014, 2001 U.S. Dist. LEXIS 2549, at *8, 2001 WL 253027, at *3 (E.D.N.Y. Mar. 7, 2001). However, should Angamarca perjure himself, he runs the risk of dismissal of his claims and possible future prosecution. *See* 18 U.S.C.A. § 1621.

**III. CONCLUSION**

The Court finds that Angamarca may appear remotely for his deposition, and the Parties may determine the appropriate means for deposing him. Additionally, he cannot be compelled to appear in-person for trial and his claims are not subject to dismissal based on his inability to appear physically.