Jensen, Justice.
 

 *889
 
 [¶ 1] Natasha Reiger appeals from a district court judgment granting primary residential responsibility of J.Z. to Matthew Zuraff. We affirm the district court's judgment granting primary residential responsibility to Zuraff.
 

 I
 

 [¶ 2] Reiger and Zuraff are the parents of J.Z., born in 2014. In January 2017, Zuraff moved for primary residential responsibility of J.Z. The district court held a bench trial in September 2017 to decide residential responsibility of J.Z. At the time of trial, Reiger was living in Bismarck, North Dakota with her father, and Zuraff was living in Parkland, Washington with his mother.
 

 [¶ 3] Social services first became involved with the family because of a positive methamphetamine screening when J.Z. was born. Both Zuraff and Reiger have a history of methamphetamine use, although Reiger testified to being sober for approximately ten months and Zuraff testified he was sober for over three years. Both parents have criminal histories related to drug use, and Zuraff was incarcerated for approximately seven months after J.Z. was born.
 

 [¶ 4] Social services intervened again because Reiger left J.Z. with her mother for days at a time, and Reiger's mother could not locate Reiger. Zuraff was incarcerated at that time. J.Z. was then the subject of a permanency order and placed with Reiger's mother. J.Z. was later placed with Reiger's father, due to Reiger's mother's health problems.
 

 [¶ 5] Reiger testified Zuraff had been physically violent towards her in the past. Zuraff acknowledged he and Reiger engaged in mutual fighting and both were violent towards each other. Zuraff denied hitting Reiger, but admitted to a "body check" using the blunt force of his chest. Zuraff was also previously convicted of a simple assault in which Reiger was the victim. Reiger previously obtained a protection order against Zuraff, which was later dismissed. Reiger said the protection order did not result from violence in their relationship, but from threats Zuraff made to her father.
 

 [¶ 6] After Zuraff was released from incarceration, he moved to Washington and completed the interstate compact process to obtain custody of J.Z. Social services in Washington evaluated Zuraff and recommended J.Z.'s placement with him. Beginning March 1, 2017, the district court approved Zuraff to have custody of J.Z. on a trial basis and return to Washington. Despite the district court's order, Reiger and her father attempted to leave the courthouse with J.Z. As a result, court staff requested a deputy sheriff to stay with Zuraff until he was out of town. The North Dakota social worker assigned to J.Z. declined to recommend who should be awarded primary residential responsibility, but noted Zuraff was previously the more appropriate and stable option.
 

 [¶ 7] After trial, the district court entered a judgment granting primary residential responsibility to Zuraff. The district court concluded N.D.C.C. § 14-09-06.2(1) factors (a), (b), (d), (e), and (h) favored Zuraff. The district court concluded
 
 *890
 
 factor (c) slightly favored Zuraff, and factors (f), (g), (i), (k), and (
 
 l
 
 ) were neutral.
 

 [¶ 8] Relating to factor (j), the district court concluded there was evidence of domestic violence, but did not apply the presumption against awarding primary residential responsibility to Zuraff because there was not sufficient evidence to find that the domestic violence involved serious bodily injury. Although it did not apply the presumption, the district court found factor (j) weighed in Reiger's favor.
 

 [¶ 9] The district court also considered other evidence under factor (m), questioning Reiger's dedication to parenting J.Z. because of her lack of a relationship with another child and relatively recent sobriety. The district court concluded it was in J.Z.'s best interest to grant primary residential responsibility to Zuraff, subject to Reiger's reasonable parenting time. Reiger appeals.
 

 II
 

 [¶ 10] On appeal, Reiger argues the district court erred by concluding there was no evidence of domestic violence involving serious bodily injury that required application of the presumption provided in N.D.C.C. § 14-09-06.2(1)(j). Reiger also argues the district court erred in concluding it could administer an oath to a witness in a different state.
 

 [¶ 11] This Court reviews a district court's decision on primary residential responsibility as follows:
 

 [The district] court's award of primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous or it is not sufficiently specific to show the factual basis for the decision. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mistake has been made. Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result. The district court has substantial discretion in making a custody determination, but it must consider all of the best-interest factors. Although a separate finding is not required for each statutory factor, the court's findings must contain sufficient specificity to show the factual basis for the custody decision.
 

 Brouillet v. Brouillet
 
 ,
 
 2016 ND 40
 
 , ¶ 7,
 
 875 N.W.2d 485
 
 (citations and quotation marks omitted).
 

 A
 

 [¶ 12] Reiger argues the district court ignored the evidence presented about domestic violence, and it should have specifically analyzed the domestic violence as required by N.D.C.C. § 14-09-06.2(1)(j). Section 14-09-06.2(1)(j), N.D.C.C., provides:
 

 In determining parental rights and responsibilities, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic
 
 *891
 
 violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded residential responsibility for the child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent have residential responsibility. The court shall cite specific findings of fact to show that the residential responsibility best protects the child and the parent or other family or household member who is the victim of domestic violence.... As used in this subdivision, "domestic violence" means domestic violence as defined in section 14-07.1-01. A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14-07.1.
 

 Domestic violence is defined as:
 

 physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.
 

 N.D.C.C. § 14-07.1-01(2).
 

 [¶ 13] Whether injuries rise to the level of serious bodily injury for application of the domestic violence presumption is a finding of fact this Court will not reverse unless it is clearly erroneous.
 
 Thompson v. Olson
 
 ,
 
 2006 ND 54
 
 , ¶ 15,
 
 711 N.W.2d 226
 
 . This Court has also held a district court did not clearly err by finding domestic violence occurred in the relationship but did not rise "to the level of domestic violence sufficient to trigger the presumption."
 
 Wolt v. Wolt
 
 ,
 
 2010 ND 26
 
 , ¶ 33,
 
 778 N.W.2d 786
 
 . In several cases, this Court has considered whether serious bodily injury occurred requiring application of the domestic violence presumption.
 
 Thompson
 
 , at ¶¶ 14-15 (concluding the district court did not clearly err in finding serious bodily injury occurred when the victim was pushed, kicked, and thrown and suffered contusions);
 
 Cox v. Cox
 
 ,
 
 2000 ND 144
 
 , ¶¶ 19-20,
 
 613 N.W.2d 516
 
 (concluding the district court did not clearly err in finding there was no credible evidence presented about domestic violence involving serious bodily injury, despite the victim's testimony about a simple assault);
 
 Ryan v. Flemming
 
 ,
 
 533 N.W.2d 920
 
 , 923-24 (N.D. 1995) (finding insufficient evidence of serious bodily injury to apply the presumption where the father broke a flower pot and pulled a phone off the wall).
 

 [¶ 14] When the district court "addresses whether evidence of domestic violence triggers the presumption under N.D.C.C. § 14-09-06.2(1)(j), we require the court to make specific and detailed findings regarding the effect the allegations of domestic violence have on the presumption."
 
 Holtz v. Holtz
 
 ,
 
 1999 ND 105
 
 , ¶ 27,
 
 595 N.W.2d 1
 
 . However, specific factual findings on domestic violence "are not required when the evidence of domestic violence does not rise to the level triggering the presumption."
 

 Id.
 

 [¶ 15] Relating to factor (j), the domestic violence presumption, the district court concluded:
 

 Natasha obtained a protection order against Matthew in the past. Thus, a court did find probable cause of an act of domestic violence, or threat of domestic violence. However this Court does not find sufficient evidence that it involved serious bodily injury. As such, the Court
 
 *892
 
 does not need to analyze whether or not there is clear and convincing evidence to overcome the presumption of this subsection of Section 14-09-06.2. Overall, this factor weighs in Natasha's favor.
 

 [¶ 16] The district court's findings of fact related to domestic violence are not clearly erroneous. The district court heard evidence about domestic violence between Zuraff and Reiger. Reiger argues the district court ignored evidence of serious bodily injury because she testified Zuraff "put his hands over my mouth to cut off my breathing. He's whipped me down to the floor. He's jabbed me with shower curtain rods. He's thrown me into ovens. Just some violent stuff." Zuraff also admitted he body checked Reiger and was convicted of simple assault. As noted by the district court in its findings, there was a protection order issued preventing contact between Zuraff and Reiger based on threats made by Zuraff to Reiger's father over the phone. Determining there was no serious bodily injury involved in these incidents was not clear error. We do not reassess the credibility of witnesses or reweigh the evidence. Because the district court concluded the evidence of domestic violence did not rise to the level triggering the presumption, it was not required to make more specific findings. Although there was evidence of domestic violence perpetrated by Zuraff, the district court did not clearly err by concluding there was not sufficient evidence of domestic violence involving serious bodily injury.
 

 B
 

 [¶ 17] Reiger argues the district court erred in allowing Zuraff's mother to testify without having a notary physically present with her in Washington to administer the oath. A district court has broad discretion when deciding evidentiary matters, and this Court will only overturn the admission or exclusion of evidence if the district court abused its discretion.
 
 Lawrence v. Delkamp
 
 ,
 
 2008 ND 111
 
 , ¶ 7,
 
 750 N.W.2d 452
 
 . A district court abuses its discretion when it "acts arbitrarily, unconscionably, or unreasonably, or when a decision is not based on a rational mental process."
 

 Id.
 

 [¶ 18] Before trial, the district court granted Zuraff's request to allow his mother to testify telephonically because she lives in Washington and traveling would be difficult due to her health conditions. Reiger did not object when Zuraff initially submitted his request. On the morning of trial, Reiger's attorney questioned whether the district court could swear in a witness located out of state. The district court stated it could administer the oath to the witness over the phone, to which Reiger's attorney responded, "I don't think that you can ... it seems to me that they should have a notary or somebody there." The district court administered the oath over the phone and allowed Zuraff's mother to testify.
 

 [¶ 19] Rule 43(a), N.D.R.Civ.P., provides:
 

 At trial, the witnesses' testimony must be taken in open court unless a statute, the Rules of Evidence, these rules, or other court rules provide otherwise. For good cause, or on agreement of the parties, and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location. A party must give notice if a witness is unable to testify orally or if testimony by contemporaneous transmission may be necessary.
 

 Rule 43, N.D.R.Civ.P., is derived from Fed.R.Civ.P. 43, and this Court may look
 
 *893
 
 to federal courts' interpretation of the federal rule.
 
 See
 
 N.D.R.Civ.P. 43, Explanatory Note;
 
 White v. T.P. Motel, L.L.C.
 
 ,
 
 2015 ND 118
 
 , ¶ 20,
 
 863 N.W.2d 915
 
 . This Court has said:
 

 Rule 43(a), N.D.R.Civ.P., requires that courts ensure "appropriate safeguards" are in place before permitting presentation of testimony in open court by contemporaneous transmission. One mechanism used by our courts to convey the importance of truthtelling to witnesses is the administration of the oath or affirmation.
 
 See
 

 Tice v. Mandel
 
 ,
 
 76 N.W.2d 124
 
 , 137 (N.D. 1956) (stating the object of requiring an oath "is first to affect the conscience of the witness and thus compel him to speak the truth, and also to lay him open to punishment for perjury in case he willfully falsifies"). Before testifying, a witness must declare he or she will testify truthfully by oath or affirmation. N.D.R.Ev. 603. The oath or affirmation is to be "administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so."
 

 Id.
 

 Persons authorized to administer oaths in recorded court proceedings are governed by N.D. Sup.Ct. Admin. R. 25 and N.D.C.C. § 44-05-01(7).
 

 Lawrence
 
 ,
 
 2008 ND 111
 
 , ¶ 14,
 
 750 N.W.2d 452
 
 .
 

 [¶ 20] Section 44-05-01, N.D.C.C., authorizes judges, clerks of court, notaries, and other clerks to administer oaths. Additionally, our administrative rules authorize the following individuals to administer oaths: (1) court reporters, (2) district court employees designated by the district court judge, (3) judicial referees, (4) magistrates, and (5) the clerk of the district court's employees. N.D. Sup. Ct. Admin. R. 25.
 

 [¶ 21] This Court has previously commented on a district court's discretion to allow telephonic testimony.
 
 Lawrence
 
 ,
 
 2008 ND 111
 
 , ¶¶ 11-16,
 
 750 N.W.2d 452
 
 . This Court concluded the district court did not abuse its discretion by not allowing a witness to testify "because no one was onsite with [the witness] to administer her oath or verify her identity other than her child."
 
 Id.
 
 at ¶ 15. However, this Court declined to determine the validity of telephonically-administered oaths.
 
 Id.
 
 (citing
 
 Gregg v. Gregg
 
 ,
 
 776 P.2d 1041
 
 (Alaska 1989) ). Under the facts and circumstances of the case, this Court affirmed the district court's decision to deny the request to testify telephonically because there were not adequate safeguards in place.
 
 Id.
 
 at ¶ 15.
 

 [¶ 22] This Court also noted its disapproval of testimony over the phone in mental health cases in
 
 Interest of Gust
 
 ,
 
 345 N.W.2d 42
 
 , 44-45 (N.D. 1984). However, that decision preceded the modification of N.D.R.Civ.P. 43 to allow for contemporaneous transmission of witness testimony.
 
 See Minutes of the Joint Procedure Comm.
 
 11 (Jan. 29-30, 1998).
 

 [¶ 23] An oath is only effective if a witness may be subject to prosecution for perjury upon making a knowingly false statement.
 
 Maryland v. Craig
 
 ,
 
 497 U.S. 836
 
 , 845-46,
 
 110 S.Ct. 3157
 
 ,
 
 111 L.Ed.2d 666
 
 (1990) (stating the oath impresses a witness "with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury"). In
 
 Harrell v. Florida
 
 , the trial court allowed two witnesses to testify via two-way video transmission from Argentina after an oath was administered by a clerk in Miami.
 
 709 So.2d 1364
 
 , 1367 (Fla. 1998),
 
 cert. denied
 
 ,
 
 525 U.S. 903
 
 ,
 
 119 S.Ct. 236
 
 ,
 
 142 L.Ed.2d 194
 
 (1998). The Florida Supreme Court concluded the trial court properly allowed the testimony and the witnesses could be
 
 *894
 
 subject to a penalty in Florida or Argentina for perjury.
 
 Id.
 
 at 1371. The
 
 Harrell
 
 court also noted there was an extradition treaty between Argentina and the United States, allowing for extradition for the crime of perjury.
 
 Id.
 
 Another court concluded a witness' testimony from Egypt over live video was sworn testimony despite the lack of an extradition treaty between the United States and Egypt.
 
 El-Hadad v. United Arab Emirates
 
 ,
 
 496 F.3d 658
 
 , 668-69 (D.C. Cir. 2007),
 
 cert. denied
 
 ,
 
 552 U.S. 1310
 
 ,
 
 128 S.Ct. 1872
 
 ,
 
 170 L.Ed.2d 744
 
 (2008). As noted in
 
 El-Hadad
 
 , any issues with testimony by contemporaneous transmission, as provided for in Fed.R.Civ.P. 43, are very different in civil cases versus the confrontation clause issues arising in criminal cases.
 

 Id.
 

 [¶ 24] Courts have allowed testimony by contemporaneous transmission in various other cases.
 
 Barrera-Quintero v. Holder
 
 ,
 
 699 F.3d 1239
 
 , 1248-49 (10th Cir. 2012) (concluding there was no due process violation in a removal proceeding when an officer testified over the telephone from another state);
 
 Parkhurst v. Belt
 
 ,
 
 567 F.3d 995
 
 , 1002-03 (8th Cir. 2009) (concluding testimony in a civil case via closed circuit television was appropriate and the district court instituted the appropriate safeguards);
 
 Thornton v. Snyder
 
 ,
 
 428 F.3d 690
 
 , 698-99 (7th Cir. 2005) (affirming court's decision to allow a trial by video conference);
 
 United States v. Sunrhodes
 
 ,
 
 831 F.2d 1537
 
 , 1544 (10th Cir. 1987) (holding telephonic testimony in a restitution proceeding did not violate the confrontation clause or rule against hearsay when the witness was placed under oath over the telephone and was subject to cross-examination);
 
 Weekly v. Washington Dep't of Licensing
 
 ,
 
 108 Wash.App. 218
 
 ,
 
 27 P.3d 1272
 
 , 1276 (2001) (holding a hearing officer did not err by allowing an out-of-state witness to appear by telephone).
 

 [¶ 25] Courts have also upheld the admissibility of depositions taken in foreign countries which were used against criminal defendants in the United States.
 
 See, e.g.
 
 ,
 
 United States v. Abu Ali
 
 ,
 
 528 F.3d 210
 
 , 241-42 (4th Cir. 2008) (determining depositions taken in Saudi Arabia under a Saudi oath did not violate a defendant's Sixth Amendment right);
 
 United States v. Kelly
 
 ,
 
 892 F.2d 255
 
 , 262-63 (3d Cir. 1989) (concluding depositions taken in compliance with United States law in Belgium were properly admitted at trial);
 
 United States v. Casamento
 
 ,
 
 887 F.2d 1141
 
 , 1174-75 (2d Cir. 1989),
 
 cert. denied
 
 ,
 
 493 U.S. 1081
 
 ,
 
 110 S.Ct. 1138
 
 ,
 
 107 L.Ed.2d 1043
 
 (1990) (concluding depositions taken in Switzerland were properly admitted, although the witnesses did not swear to a formal oath but they each affirmed their testimony was truthful);
 
 United States v. Salim
 
 ,
 
 855 F.2d 944
 
 , 951-52 (2d Cir. 1988) (determining a deposition taken under French rules was properly admitted in a criminal proceeding).
 

 [¶ 26] In
 
 Gregg
 
 , the Alaska Supreme Court determined a judge may administer an oath to a witness over the telephone from the courtroom.
 
 776 P.2d at 1044
 
 . The court noted the civil procedure rule governing telephonic appearances did not require a person physically present with the witness to administer the oath.
 

 Id.
 

 at 1043
 
 . The Alaska Supreme Court also concluded the judicial power of the State of Alaska may exceed the geographic boundaries, including the power to punish perjury.
 

 Id.
 

 at 1044 (citing
 
 Alaska Stat. § 12.05.010
 
 (1989) ;
 
 Wheat v. Alaska
 
 ,
 
 734 P.2d 1007
 
 , 1008 (Alaska App. 1987) ). The court concluded it was constitutionally vested with the authority to make administrative rules for the courts and administration of the witness oath was within the scope of that authority.
 

 Id.
 

 at 1043
 
 . The court also noted
 
 *895
 
 the rule was intended to facilitate judicial proceedings, especially in light of the expense of traveling far distances.
 

 Id.
 

 at 1043-44
 
 . Accordingly, the Alaska Supreme Court held judges are authorized to administer the witness oath telephonically.
 

 Id.
 

 at 1044
 
 .
 

 [¶ 27] The district court determined there were adequate safeguards in place to allow Zuraff's mother's testimony, which was not an abuse of discretion. His mother's identity was reasonably verified through her testimony, and the district court administered an oath to her. The oath, although administered by a judge in North Dakota to a witness testifying from Washington, could be effective because Zuraff's mother could be subject to prosecution under either Washington or North Dakota law.
 
 See
 

 Harrell
 
 ,
 
 709 So.2d at 1371
 
 . As noted in
 
 El-Hadad
 
 , the concerns in a civil case regarding testimony through contemporaneous transmission is different from a criminal case.
 
 496 F.3d at 669
 
 . Therefore, if testimony from a deposition taken in a foreign country or testimony through contemporaneous transmission may be used against a criminal defendant, it reasonably follows that contemporaneous sworn testimony may be used in a civil case. Like in
 
 Gregg
 
 , the civil procedure rules allow for telephonic testimony and allow judges to administer oaths to witnesses. Adequate safeguards were in place to ensure the witness was properly identified and understood the seriousness of the matter and possible penalty for perjury. Although this Court declined to address the appropriateness of telephonically-administered oaths in
 
 Lawrence
 
 , under the facts here, the district court did not abuse its discretion.
 

 III
 

 [¶ 28] We affirm the district court's judgment granting primary residential responsibility to Zuraff.
 

 [¶ 29] Jon J. Jensen
 

 Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Gerald W. VandeWalle, C.J.