NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4657-18T1

PHANINDER PATHRI,

      Plaintiff-Appellant,

v.

SRIVANI KAKARLAMATH,

      Defendant-Respondent.

_____

**APPROVED FOR PUBLICATION**

**January 23, 2020**

**APPELLATE DIVISION**

Argued December 17, 2019 – Decided January 23, 2020

Before Judges Fisher, Gilson and Rose.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FM-09-2150-18.

Gregory A. Pasler argued the cause for appellant (Townsend Tomaio & Newmark, LLC, attorneys; Gregory A. Pasler, on the briefs).

Adam Wiseberg argued the cause for respondent (Ziegler, Zemsky & Resnick, attorneys; Adam Wiseberg, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In most respects, the bench and the bar might – with apologies to Gilbert and Sullivan – proclaim the court rules to be "the very model of a modern" set of civil guidelines.[1]  But, in one respect, the rules haven't quite caught up to the technological revolution.  So, feeling "plucky and adventury,"[2] we granted leave to appeal to consider how a judge should assess a party's request to appear at trial and present testimony by way of contemporaneous video transmission.[3]

The issue arose in this matrimonial action.  The parties came to the United States from India in 2007.  They have two minor children.  Plaintiff filed this suit in 2018 and, soon after, moved back to India.  Defendant filed a counterclaim for a divorce.  She and the children reside in Maryland.  In May 2019, the judge set the matter down for a trial to occur in June 2019.  A week before the scheduled trial, plaintiff moved in limine, claiming he was unable to obtain a visa to enter this country; he requested to appear and testify at trial from India by contemporaneous video transmission.  Finding such a procedure would inhibit her ability to assess plaintiff's testimony and credibility, the judge denied

---

[1]  W.S. Gilbert and Arthur Sullivan, "The Major-General's Song" (The Pirates of Penzance) (1879).

[2]  Ibid.

[3]  We respectfully recommend consideration of the issues presented by the appropriate Supreme Court rules committees.

A-4657-18T1

the motion. We proceeded on an emergent basis, stayed the divorce trial, and granted leave to appeal.

Our court rules do not provide for testimony by way of contemporaneous video transmission, but they don't prevent it either. In fact, trial testimony may be presented in a number of ways that do not require the witness' physical presence. Most notably, juries are routinely presented with videotaped testimony of physicians, see R. 4:14-9(e); in those instances, juries must assess the credibility of those physicians and assign the weight to be given to the recorded testimony only by what they see on and hear from a video screen. Obviously, the rule bespeaks our confidence in the ability of juries to perform their important function without witnesses' physical presence. Videotaped testimony is also permitted in certain criminal proceedings, see R. 3:13-2(a), and video appearances are permitted in municipal courts, see R. 7:8-7. Telephone testimony is authorized in actions to determine whether an individual is incapacitated. R. 4:86-6(a).

The rules, however, provide no other guidance about when testimony by contemporaneous video transmission may occur. In considering the propriety of telephonic testimony at a post-conviction relief hearing, the Supreme Court acknowledged that the rules "do not expressly require [live, in-person

testimony]" while also finding that the rules do not "directly prohibit remote testimony by telephone." State v. Santos, 210 N.J. 129, 139 (2012). In denying relief here, the trial judge relied on Aqua Marine Products, Inc. v. Pathe Computer Control Systems Corp., 229 N.J. Super. 264 (App. Div. 1988), which provided the grounds for allowing testimony by telephone. The fact that the opinion was written over thirty years ago – decades before Skype, FaceTime, and the like were even dreamt of – should give us pause. The fact that Aqua Marine considered only the presentation of remote testimony heard but not seen is a factor that also greatly distinguishes what was requested here. Our 1988 opinion reveals our concern that the trial judge permitted telephonic testimony over the other party's objection; we were troubled by that ruling because "[t]here was no way to ascertain [the witness'] identity, even to assure that he was who he said he was." Id. at 274. We also reversed the judge's ruling because "there was no basis at all on which the indefinable and elusive indicia of credibility, denominated 'demeanor,' could be evaluated by the fact-finder." Ibid. Out of these concerns, we constructed a two-part test that would allow telephonic testimony only in "special situations in which there is either exigency or consent and in which the witness' identity and credentials are known quantities." Id. at 274-75.

A-4657-18T1

In Santos, the Court appears to have accepted Aqua Marine as expressing the proper standard for determining if or when telephonic testimony should be allowed. 210 N.J. at 141-42. But the Court proceeded further by briefly considering the propriety of contemporaneous video transmission, as the parties' arguments morphed beyond the initial request for telephonic testimony:

> Before our Court both parties offered suggestions on how remote testimony could be presented in a way that might satisfy concerns about witness identification, oath administration, and the assessment of witness demeanor. Indeed, the arguments ventured past use of the telephone to more modern forms of video communication, presumably in an effort to satisfy the types of concerns about the integrity of remote testimony addressed in Aqua Marine. The intriguing and important issues raised through that argument only augment our initial concern that there should not be a grant of telephonic testimony, or even a superior form of video-communication testimony, until and unless there is a satisfactory demonstration that the means to be used will ensure the essential integrity of the testimony for factfinding purposes.
>
> [Id. at 142.]

The Santos Court made no further attempt to define when contemporaneous video transmission might be permitted, or what conditions ought to be imposed to obtain certainty about the witness' identity and ensure factfinding integrity, because it found no evidentiary hearing was required in the case before it. Id. at 145-46. Because – as the Santos Court held – the rules do not prohibit remote

5

video testimony in civil matters,[4] we see no reason why a family judge could not permit testimony by contemporaneous video transmission in appropriate circumstances. So, even though expressed only briefly, without finality, and in dictum,[5] we approach the issue presented here by assuming, as Santos suggests, that Aqua Marine still provides guidance in this century and that its two-part test requiring "exigency" and certainty in the witness' identity must be satisfied.

To appreciate the concerns that gave birth to Aqua Marine's holding, we briefly consider its unusual facts. The case included a contractual claim about a rejected piece of machinery. 229 N.J. Super. at 266-67. At the trial's start, the name of a North Carolina company that purchased the rejected machinery was revealed; one of the parties reached out to that company and, over the other's objection, obtained the trial judge's approval to hear a company representative testify by telephone. Id. at 273. It was in this context – where there was no apparent discovery or prior investigation about the North Carolina company's

---

[4] We intend that our holding should have no impact on criminal proceedings due to the Sixth Amendment's application.

[5] We adhere to the general standard that calls for following the Supreme Court's "considered dicta almost as firmly as by the Court's outright holdings, particularly when . . . a dictum is of recent vintage and not enfeebled by any subsequent statement." State v. Rose, 206 N.J. 141, 183 (2011) (quoting McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 19 (1st Cir. 1991)).

involvement and how the testimony was sprung on the other side – that we expressed our deep concern about the allowance of telephonic testimony without consent. We thus insisted that in future cases a party would have to show – absent consent – an exigent reason for departing from the norm of in-person testimony and provide assurance as to the credentials of the person on the other end of the telephone. Those circumstances are a far cry from what is sought here. Moreover, we must look at what plaintiff seeks by understanding both the extraordinary advancements in technology that have occurred since Aqua Marine, and by the dramatically different circumstances in which the issue has risen here.

We also find helpful Federal Rule of Civil Procedure 43(a), which was amended more than twenty years ago to allow trial testimony via contemporaneous video transmission from a different location "[f]or good cause in compelling circumstances and with appropriate safeguards[.]" The advisory committee notes to this 1996 amendment make clear that the rule intends that there be both a demonstration of "good cause in compelling circumstances" and the imposition of appropriate conditions, because in-person testimony remains preferable to any other alternative. That is, the amended federal rule recognizes the propriety of alternative methods while also holding, as self-evident, that the

"very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling."

It seems to us that what we referred to in <u>Aqua Marine</u> as an "exigency" and what the federal rule describes as "good cause in compelling circumstances" are two ways of expressing the same thing. Although neither <u>Aqua Marine</u> nor Federal Rule of Civil Procedure 43(a) identifies the factors relevant to the disposition of such an application as was denied here, we conclude that judges should consider the following:

- the witness' importance to the proceeding;

- the severity of the factual dispute to which the witness will testify;

- whether the factfinder is a judge or a jury;

- the cost of requiring the witness' physical appearance in court versus the cost of transmitting the witness' testimony in some other form;

- the delay caused by insisting on the witness' physical appearance in court versus the speed and convenience of allowing the transmission in some other manner;

- whether the witness' inability to be present in court at the time of trial was foreseeable or preventable; and

- the witness' difficulty in appearing in person.

8

The logic of the first factor should be readily apparent. The greater the witness' importance in the dispute, the heavier should be the burden of excusing in-person testimony. But, if the witness is merely conveying some information of relatively minor importance, or if the witness is a custodian of records, or the like, the burden ought not be onerous.

Dovetailing with the first factor, the second suggests that the judge should consider whether the witness – even if a party – is offered to address a sharply disputed question of fact, something that goes to the heart of the matter. We are told that the parties' forthcoming trial will mainly address alimony and equitable distribution issues. The applicable statutes – N.J.S.A. 2A:34-23 and N.J.S.A. 2A:34-23.1 – provide as guidance numerous factors for a judge in determining whether alimony is appropriate, and, if so, its duration and amount, as well as how a judge should fairly divide marital property. Some factors – like the length of the marriage, the age of the parties, their health, parental responsibilities, and absence from the job market – may be obvious and undisputed. Others – like the parties' lifestyle, financial and non-financial contributions to the marital partnership, and the need and ability to pay – may be disputed or uncertain. When a party seeks to present remote testimony during a matrimonial trial, the

9

judge should examine what it is that is in dispute and then determine what the witness contributes to the dispute's resolution.

Based on experience, we know in many matrimonial trials the testimony of parties more or less characterizes or gives a personal slant on established facts rather than presents a starkly different version of the relevant facts. The judge should consider whether the witness would provide testimony about an actual disagreement about the facts or merely a personal view on how these factors ought to apply in the given case. For example, a party's testimony about income may not be critical because tax documents or the employer's records may establish the amount of the parties' income; so, a witness' repeating of those facts may have little influence on the factfinder. On the other hand, when there are disputes about whether there is undisclosed income, hidden assets, or about the amount required to maintain a lifestyle, and the like, the witness' testimony may be far more influential on the factfinder.

A judge asked to consider the propriety of a witness' testimony by contemporaneous video transmission should inquire into the scope and substance of that testimony, and whether that testimony is actually in dispute, before determining whether that witness should testify in person. The court should ascertain the significance of the witness' credibility and demeanor and

10

whether the factfinder is better served in its truth-finding function by having testimony in person rather than by contemporaneous video transmission.

It should be plainly obvious that our third factor – whether the factfinder is a judge or a jury – is material to the decision. In many instances a judge would likely overcome whatever barrier to ascertaining the witness' credibility and demeanor is created by contemporaneous video transmission than would a jury of laypersons not accustomed to weighing testimony in any form. See In re Marriage of Swaka, 319 P.3d 69, 73 (Wash. App. 2014).[6]

Whatever costs are associated with requiring the witness to appear in person should be weighed against the cost of the contemporaneous video

---

[6] The notion that a judge as factfinder has a critical need to view the witness face to face, or observe the witness' body language in person, in order to make findings about the witness' credibility and demeanor may be greatly exaggerated. Many bench trials are conducted by placing the witness in a box below and to the immediate left or right of the judge, who is left to consider the witness' demeanor while looking at the side of the witness' face. Depending on the framing of the transmission – a condition that a judge may impose in ruling on an application for remote testimony, as we discuss later in this opinion – a judge may actually have a better opportunity to observe the witness "face to face" and to assess the witness' body language while testifying by video than the judge would if the witness were required to testify in person. We, thus, do not give as much weight to the concerns expressed by other courts that video conferencing deprives a factfinder of "[t]he immediacy of a living person," Stoner v. Sowders, 997 F.2d 209, 213 (6th Cir. 1993), or that "[v]irtual reality is rarely a substitute for actual presence," United States v. Lawrence, 248 F.3d 300, 304 (4th Cir. 2001).

A-4657-18T1

transmission.  See Lopez v. NTI, LLC, 748 F. Supp. 2d 471, 480 (D. Md. 2010); Angamarca v. Da Ciro, Inc., 303 F.R.D. 445, 446-48 (S.D.N.Y. 2012).  That would not only include the travel and lodging expenses necessarily incurred but other costs, such as the impact on a party's income caused by a loss of time from work.  We know that plaintiff lives and works in India.  The cost of the flight and a hotel are one thing; there also may be an impact on his income and employment caused by any loss of time from work by traveling to New Jersey rather than testifying remotely.  Judges should consider whether the cost of insisting on in-person testimony is simply not worth whatever the impact on the factfinder's assessment of the witness or, for that matter, what it is the parties are fighting over.

The delay in the case's disposition is also a factor.  In fairness, a judge should consider the scheduling of a trial date that does not cause an undue economic impact on the witness while traveling to and from and testifying in New Jersey.  That consideration could make scheduling difficulties that would not be presented if, as in this case, plaintiff were permitted to testify from India.  That delay also has a value that should be included in the calculus.

Foreseeability of the circumstance that called for the application to testify by contemporaneous video transmission seems a valid consideration.  A sudden

12

business trip or family member's illness may require a party to travel abroad at or around the time of a trial; a judge may inquire as to the circumstances that led to that trip and determine whether the witness was faced with the unavoidable consequence of being outside the jurisdiction at the time of trial. The record reveals that plaintiff moved to India shortly after commencing this divorce action. Although most divorce actions are resolved without a trial, a party taking that step should consider the possibility and plan accordingly. In making the determination whether to permit testimony by contemporaneous video transmission, a judge has a right to know what steps plaintiff took in advance of his departure to avoid the need for the relief now sought and assess the bona fides of that party's actions.

Most of the focus in the trial court was on the alleged difficulty or impossibility of plaintiff entering the United States to attend the trial. He claims he is unable to obtain a visa. If that is true it would greatly favor granting the relief he seeks. See El-Hadad v. United Arab Emirates, 496 F.3d 658, 669 (D.C. Cir. 2007).[7] The judge and defendant questioned that contention or, at the very least, believed that plaintiff should have provided greater evidence of his

_____

[7] A witness' health may also cause the type of difficulty that would inure in favor of testimony by contemporaneous video transmission. See, e.g., Zuraff v. Reiger, 911 N.W. 2d 887, 892-95 (N.D. 2018).

claimed inability to obtain a visa. We agree that these are all circumstances that factor into the analysis. But, as we have already described, the fact that plaintiff may be able to gain authorization to reenter the United States is not the only factor that should be considered.

Ultimately, courts asked to make such rulings must remain mindful of Rule 1:1-2, which declares that the court rules are to be "construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." The factors we have proposed should aid in determining whether the principles stated in Rule 1:1-2, which undergird the application of all court rules, see Salazar v. MKGC Design, 458 N.J. Super. 551, 557-58 (App. Div. 2019), favor or disfavor allowing plaintiff to testify by contemporaneous video transmission. Indeed, in most cases, it would be hard to imagine that the fair application of these principles would lead to a trial that lacks a party's testimony rather than contains that testimony in a less than desirable form. If a party is not permitted to testify by way of contemporaneous video transmission, and is unable to attend in person notwithstanding, the ruling could have the undesirable effect of turning the trial into a proof hearing in favor of the one party able to attend. Judges, in the final

analysis, should be wary of the impact such a ruling would have on the overall presentation of the proofs.

If it is determined that these factors favor allowing plaintiff to testify from India, we do not foreclose the judge's right to impose appropriate conditions on the manner of the transmission. We also do not foreclose the judge's exercise of discretion in denying relief if important conditions cannot be met.

The judge, for example, may require a particular size monitor or multiple monitors in the courtroom for the transmission, as well as insist on a particular framing of what the video transmits (in other words, whether the image is not just of the witness' face but also enough of his body so that the judge could better appreciate his overall demeanor). The judge has the right to expect clear video and audio, and that the remote witness testify from a place suitable to the solemnity of the proceeding. Copies of documents that the parties expect to show the witness should be forwarded to that location in advance.

* * *

Plaintiff moved, defendant opposed, and the judge ruled, when all they had to go on was our Aqua Marine decision and the Supreme Court's inconclusive dictum in Santos. In fairness to the parties and to the judge, we simply require a "do-over" or, in legal terms, we vacate the order under review

15

and remand to allow plaintiff to move again, this time with a more fulsome presentation than previously provided. Plaintiff's application should address all the factors we have identified, as should the judge's ruling.

Vacated and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4657-18T1